## 6089.   INTER-SOUTHERN LIFE INSURANCE CO. *v.* SMITH.

BROYLES, J.   The issues as to whether the premiums due by the insured upon the contract of insurance had been paid in full prior to the cancellation of the policy by the defendant, as well as whether there was a waiver of the right to forfeit, to be implied from the course of dealings between the insurer and the insured, were questions of fact for determination by the trial court upon the conflicting testimony; and for this reason it can not be held that it was error on the part of the appellate division of the municipal court to overrule the motion for a new trial.

The above is the opinion of the majority of the court, but, in the opinion of the writer, the evidence was not sufficient to support the judgment, and a new trial should have been granted.

*Judgment affirmed. Broyles, J., dissents.*

DECIDED JULY 2, 1915.   ON REHEARING, OCTOBER 1, 1915.

Action on contract; from municipal court of Atlanta.   October 20, 1914.

James Bernard Smith sued the Inter-Southern Life Insurance Company, alleging, that on October 30, 1911, the defendant entered into a contract of insurance with him by which it agreed to pay the beneficiary under the policy $2,000, in consideration of the premiums on the policy; that he paid the defendant $5.40 a month as a monthly premium for each month from October 30, 1911, and up through July, 1914; that on August 4, 1914, the defendant refused to accept the monthly premium on the policy and notified him that it had cancelled the policy, and refused to comply with the terms of the contract; that the defendant has injured and damaged him in the sum of $172.80, together with interest thereon from the date of the payment of each monthly premium.   He prayed judgment for the full amount of the premiums paid, with interest.   By amendment he alleged that at various times while the policy was in

force, the premiums on the contract were paid after they became due, and after the thirty-days grace period had expired, and that they were accepted by the defendant, and that the plaintiff had been led to believe that premiums would be accepted after they were due and after the said grace period had expired. The defendant in its answer denied these allegations except as to the making of the contract and as to the refusal to accept the monthly premium on August 4. It alleged that at that time the policy had lapsed. The trial resulted in a verdict against the defendant for $167 and interest. The grounds of the motion for a new trial were, that the verdict was contrary to law and to the weight of the evidence, and without evidence to support it.

In the brief of the evidence it is stated: "Mrs. Smith, the only witness for the plaintiff, testified, that she was the wife of the insured; that she had been accustomed to pay the premiums on the policy of insurance involved in this suit; that she had always paid premiums on said policy to collector at her home; that she was positive that every premium on the policy prior to the one due June 30, 1914, had been paid promptly on the date when due; that she was sure she had paid premiums due June 30, 1914, and that she had receipt therefor; that it was on the table with other receipts; upon its not being found there, that it was at home; upon being offered by the court time to go home for it, that she was not sure that she could find it, but was positive that she had it; that on or about July 26 or July 27, 1914, Mr. Spangler, subagent of the insurance company, informed her that this particular premium was past due and that the period of grace for its payment would expire on July 30, 1914; that said Spangler told her he would come by on that day, but for her to look after it herself in the event that he did not come; that said Spangler did not come by on that day, and that she made no effort to pay, nor any tender of this premium, until August 4, at which time said premium was refused, and notified her that the policy was canceled."

Mr. Spangler testified, for the defendant, that he was subagent of the Inter-Southern Life Insurance Company, and, as such, was under the supervision and direction of Mr. Redding; that he collected premiums on this policy monthly for more than a year previous to June, 1914, at the home of Mrs. Smith; that all premiums prior to June 30, 1914, were paid before the grace period expired;

that on a few occasions he advanced part of the premiums for Mrs. Smith, but such advances were made without any knowledge or consent on the part of Mr. Redding or of the company; that if she had not repaid him for such advances, it would have been his individual loss, and not a loss of the company; that the premiums on which these advances were applied were always paid by himself to the company before the grace period expired; that he was never authorized by Mr. Redding or by any one else in behalf of the company to waive prompt payment of the premiums; that during the month of July, after this particular premium was due, but before the period of grace thereon had expired, he notified Mrs. Smith that if the premium was not paid before the expiration of the grace period, the policy would be held to be lapsed and a forfeiture declared; that he called on her on or about the 26th or 27th of July and told her that the grace period would expire on July 30, and he would try to call on her again on July 30, but that if he did not come by on July 30, not to wait for him, but for her to look after it; that on July 30 he was sick and for that reason did not call on her that day.

Mr. Redding testified, that he was general agent for the State of Georgia for the defendant company, and that Mr. Spangler, who was under his supervision and direction, had never been authorized to waive the time of payment of the premium due on June 30, 1914, or any other premium; that all previous premiums had been paid to the company before the expiration of the grace period; that he notified Mrs. Smith about the middle of July that if this policy lapsed, a forfeiture would be declared; that no offer of payment of the premium due June 30, 1914, was made until August 4, 1914, five days after the grace period had expired, and it was then refused. Dr. G. O. Jones testified that he was medical examiner for the defendant company, and that on August 4, 1914, the plaintiff came to his office to undergo a physical examination for reinstatement of his policy.

The plaintiff introduced a receipt of the defendant company, dated June 30, 1914, for $5.40 "to apply on the monthly premium due on policy No. 5995 issued to Jas. B. Smith subject to the conditions endorsed on the back" of the receipt. The defendant introduced a like receipt dated June 30, 1914, which the witness Redding testified was never delivered to the plaintiff. He testified

that receipts for premiums were made out before due, as of date when due, and not delivered until premiums were paid, and therefore did not always show date of actual payment, but that they did show for what periods they were made. On the back of the receipts it was stated that the receipt would be void unless signed by the secretary of the company and countersigned by the auditor, and unless the amount specified therein was actually paid.

The policy contained the following provisions: "Premiums are due and payable in advance at the executive offices of the company in the city of Louisville, Kentucky, but may be paid to an authorized agent of the company in exchange for the company's receipt therefor, signed by the president or the secretary. If any note or other obligation given for a premium, or any part thereof, on this policy, shall not be paid when due, this policy shall be and become null and void without any notice or action of the company, notwithstanding any receipt which may have been given for such premiums, except as herein provided." "A grace of one month will be allowed in the payment of all premiums after the first year, the policy to remain in full force during that time." "No change or modification of any of the provisions of this contract shall be valid unless made at the executive office, either by the president, vice-president, secretary, or assistant secretary, in writing and endorsed hereon, and the company shall not be bound by any promise or representation heretofore or hereafter given by any agent or person other than as above."

*J. N. Johnson Jr., Napier, Wright & Wood,* for plaintiff in error.
*A. W. White, Moore & Branch,* contra.

### ON REHEARING.

RUSSELL, C. J. On rehearing, but one salient point was raised, to wit, that the jury erred in believing the chief witness for the plaintiff. It is true there were various circumstances submitted in proof which tended to discredit this witness altogether, and might have justified a jury in discrediting her, but the court (sitting as court and jury), after seeing and hearing all the witnesses, gave the preference in credibility to the testimony for the plaintiff. The trial court, which has the opportunity of observing the manner and demeanor of those who deliver testimony, is so much nearer the sources of truth than a reviewing court that it has come to be a rule of universal application that the determination of the comparative credibility of witnesses by the trial court shall not be

disturbed. The fact that the witness was not corroborated, instead of depreciating her credibility in this court, tends to strengthen her credibility as estimated by the trial judge, because the more credible the witness, the less is the need for corroboration.

Upon the subject of waiver it may be said that this doctrine had no application if the court believed that the premium was in fact paid. . There is no necessity for the assertion of waiver by the company of its right to insist upon prompt payment of premiums, if in fact the premiums were promptly paid. The circumstance that the plaintiff submitted to a re-examination and made an application for reinstatement was one addressed to the court. It might seem incredible to the ordinary man that one who had paid his premium would thereafter tacitly admit that he had not paid it, by seeking to be reinstated; but circumstances can be imagined under which such an inconsistency could be explained. It might be that, even with conscious knowledge that he had paid a premium, one who was a stranger, or but little known in a community, and who feared the result of a controversy with another, better known and of greater repute, would prefer, where its payment was positively disputed, to pay the premium a second time, rather than endanger the protection of the policy. Be this as it may, on issues of fact the jury are the doctors of all doubt, and when the judge sits as a jury he takes their place and he then is the ultimate doctor.

*Judgment adhered to on rehearing. Broyles, J., dissents.*